**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

VALERIE ANN CAREY,

                Plaintiff,

vs.                                                        Case No. 3:15-cv-1118-J-JRK

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

                Defendant.
_____/

## OPINION AND ORDER[2]

### I. Status

Valerie Ann Carey ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is a result of "Neck and lower back [issues]," "Nerve damage," "Carpal tunnel syndrome," "Blood pressure," "Heart conditions," "C[hronic ]O[bstructive ]P[ulmonary ]D[isease]," "Hearing problems/ringing in ears," "Loss of feeling in feet and hands," and "Depression." Transcript of Administrative Proceedings (Doc. No. 12; "Tr." or "administrative transcript"), filed December 14, 2015, at 84, 98, 114, 131, 306. On January 27, 2012, Plaintiff filed applications for DIB and SSI,

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017.  Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 11), filed December 14, 2015; Reference Order (Doc. No. 14), signed December 18, 2015 and entered December 21, 2015.

alleging an onset disability date of June 19, 2008. Tr. at 229-32 (DIB), 233-41 (SSI).[3] The alleged onset disability date was later amended to August 6, 2011. Tr. at 15, 33. Plaintiff's applications were denied initially, see Tr. at 84-97, 112, 152-56, 163 (DIB), 98-111, 113, 157-62, 164 (SSI), and were denied upon reconsideration, see Tr. at 114-30, 148, 150, 167-71, 177 (DIB), 131-47, 149, 151, 172-76, 178 (SSI).

On November 14, 2013, an Administrative Law Judge ("ALJ") held a hearing, during which the ALJ heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 31-69. At the time of the hearing, Plaintiff was fifty-two (52) years old. Tr. at 35. The ALJ issued a Decision on December 23, 2013, finding Plaintiff not disabled through the date of the Decision. Tr. at 13-25.

The Appeals Council then received additional evidence in the form of a brief authored by Plaintiff's counsel. Tr. at 4-5; see Tr. at 375-78 (brief). On August 7, 2015, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On September 15, 2015, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff alleges three points of error on the part of the ALJ: 1) failing at step two to find Plaintiff's carpal tunnel syndrome was a "medically determinable impairment"; 2) erroneously concluding at step four that Plaintiff could return to her past relevant work; and 3) rejecting a treating physician's opinion without the requisite good

---

[3] Although actually completed on February 15, 2012, see Tr. at 227, 229, 233, the filing date of the applications is listed elsewhere in the administrative transcript as January 27, 2012, Tr. at 33, 84, 98, 114, 131.

cause. Plaintiff's Brief (Doc. No. 16; "Pl.'s Br."), filed February 11, 2016, at 1; see Pl.'s Br. at 10-14 (argument regarding issue one), 14-20 (argument regarding issue two), 20-25 (argument regarding issue three). On May 10, 2016, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem.") addressing the points raised by Plaintiff.

After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be reversed and remanded for further proceedings. Specifically addressing Plaintiff's first argument, the undersigned finds that the ALJ erred in determining at step two that Plaintiff's carpal tunnel syndrome is not severe, and in later steps by failing to account for the alleged limitations associated with the syndrome.

On remand, reevaluation of Plaintiff's carpal tunnel syndrome may impact the other arguments raised by Plaintiff in this appeal. For this reason, the Court need not address Plaintiff's remaining arguments. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

## **II.  The ALJ's Decision**

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ proceeded through step four, where his inquiry ended based on his step four finding.  See Tr. at 15-24.  At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since August 6, 2011, the amended alleged onset date."  Tr. at 15 (emphasis and citation omitted).  At step two, the ALJ found that "[Plaintiff] has the following severe impairments: spine disorders, affective disorders, anxiety disorders and somatoform disorders."  Tr. at 15 (emphasis and citation omitted).  At step three, the ALJ ascertained that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. at 16 (emphasis and citation omitted).

---

[4]  "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except that she is limited to only frequent stooping and to only frequent climbing of ladders, ropes, and scaffolds. In addition, she needs to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. As to her mental conditions, [Plaintiff] is able to understand and remember simple instruction[s] and to sustain them; complete routine mental tasks and make simple work related decisions without special supervision; relate appropriately with coworkers and with supervisors; and adapt to changes in the workplace.

Tr. at 17 (emphasis omitted). At step four, the ALJ found that "[Plaintiff] is capable of performing past relevant work as a housekeeper" because "[t]his work does not require performance of work-related activities precluded by [Plaintiff's RFC]." Tr. at 24 ( emphasis and citation omitted). Based on the finding at step four, the ALJ did not proceed to step five. See Tr. at 24. The ALJ concluded that Plaintiff "has not been under a disability . . . from August 6, 2011, through the date of th[e D]ecision." Tr. at 24 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard

is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff contends that the ALJ erred in finding her carpal tunnel syndrome is not a severe impairment. Pl.'s Br. at 1, 10-14. Argues Plaintiff, the ALJ erroneously concluded that there are no objective findings or nerve conduction studies to confirm a diagnosis of carpal tunnel syndrome, when in fact, nerve conduction studies were conducted twice and the diagnosis confirmed both times. Id. at 11-12. Plaintiff also details the ways in which the carpal tunnel syndrome allegedly affects her and contends the ALJ did not adequately address these alleged limitations later in the sequential inquiry. Id. at 13-14. Defendant responds that the nerve studies were conducted prior to Plaintiff's amended alleged onset date of disability. Def.'s Mem. at 5. Further, argues Defendant, even with the diagnosis and alleged limitations, the carpal tunnel syndrome does not qualify as a severe impairment. Id. at 5-7.

Step two of the sequential evaluation process requires the ALJ to determine whether a claimant suffers from a severe impairment. See 20 C.F.R. § 404.1520(a)(4)(ii). At this step, "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work[.]" Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). In the context of a Social Security disability benefits case, a condition is severe if it affects a claimant's ability to maintain employment. See id. A claimant has the burden of proving that impairments are severe. See Bowen, 482 U.S. at 146 n.5 (recognizing the claimant's burden of proof at step two to show "a medically severe impairment or combination of impairments"). Further, "[t]he severe impairment either must have lasted or must be expected to last for at least 12 months." Davis v. Barnhart, 186 F. App'x 965, 967 (11th Cir. 2006) (unpublished) (citing Barnhart v. Walton, 535 U.S. 212, 216 (2002)).

A severe impairment interferes with a claimant's ability to perform "basic work activities." See Bowen, 482 U.S. at 141. The Regulations provide six examples of "basic work activities": "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers, and usual work situations; and (6)

Dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b); see also Davis, 186 F. App'x at 966-67.

"The finding of any severe impairment, based on either a single impairment or a combination of impairments, is enough to satisfy step two because once the ALJ proceeds beyond step two, he is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe." Burgin v. Comm'r of Soc. Sec., 420 F. App'x 901, 902 (11th Cir. 2011) (unpublished). To be sure, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) (unpublished) (emphasis added); see Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987) (recognizing that "the finding of any severe impairment . . . whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe" is sufficient to satisfy step two).

There are occasions when an ALJ identifies one or more impairments at step two but does not identify all of the impairments that should be considered severe. Any omission of a particular severe impairment at step two is harmless if "the ALJ considered all of [the] impairments in combination at later steps in the evaluation process." Burgin, 420 F. App'x at 903 (citation omitted); see Heatly, 382 F. App'x at 825 (stating that an "ALJ is required to demonstrate that [he or she] has considered all of the claimant's impairments, whether severe or not, in combination"); Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984) (finding that an ALJ must make "specific and well-articulated findings as to the effect of the combination of impairments").

-8-

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1).  It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy.  20 C.F.R. § 404.1545(a)(5).  In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, at step two, the ALJ specifically found that Plaintiff's alleged carpal tunnel syndrome is not a severe impairment.  Tr. at 16.  In so finding, the ALJ wrote:

> [Plaintiff] alleges that she is disabled due to carpal tunnel syndrome. [Plaintiff] reported a history of carpal tunnel syndrome during her consultative examination with Badri Mehrotra, M.D. in April 2012 stating that no surgery was performed (Exhibit 15F[5]). Dr. Mehrotra noted some diminished grip strength bilaterally and tenderness; however, no deformity of any of the joints was noted. Since this evaluation, a review of the record fails to show any additional complaints or abnormal findings of the hands or wrists or deficits in grip strength. In order to be considered a medically determinable impairment, an alleged condition must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques (SSR 96-4p). Although the regulations provide that the existence of a medically determinable impairment must be established by evidence consisting of signs, symptoms, and laboratory findings, under no circumstances may the existence of an impairment be established on the basis of reported symptoms alone (20 [C]FR [§§] 404.1529 and 416.929). <u>In this case, there are no objective findings by EMG and nerve conduction studies to confirm a diagnosis of carpal tunnel syndrome.  Thus, the existence of a</u>

---

[5] Exhibit 15F is located in the administrative transcript at pages 705-11.

-9-

> medically determinable impairment cannot be established in the absence of objective medical abnormalities, i.e. medical signs and clinical findings.

Tr. at 16 (emphasis added).

It is undisputed, contrary to the ALJ's finding, that in the administrative transcript there are two nerve conduction studies that confirm a diagnosis of carpal tunnel syndrome. See Pl.'s Br. at 12; Def.'s Mem. at 5. Specifically, on September 12, 2008, Robert B. Dehgan, M.D., P.A., authored a report after conducting a nerve conduction study in which he concluded that the "[s]tudy suggests Rt carpal tunnel syndrome." Tr. at 436-37. Plaintiff was referred shortly before the study for treatment of carpal tunnel syndrome. Tr. at 435. Then, almost two years later, on July 14, 2010, Amudha M. Perumal, M.D., conducted a nerve study and found that "there is evidence of R moderate L mild CTS." Tr. at 502. After the study was performed, it was noted that Plaintiff alleged "severe hand numbness in Rt hand as well as left." Tr. at 438. On August 10, 2010, Miguel Machado, M.D., a neurosurgeon, opined that "[s]urgery for the carpal tunnel that she has on EMG will not improve her symptoms." Tr. at 778-79; see also Tr. at 777.

While both of these studies occurred prior to the amended alleged onset disability date of August 6, 2011, their existence is contrary to the ALJ's finding that the diagnosis cannot be confirmed by objective testing. Further, the last test occurred just more than one year prior to the alleged onset date. After the last study, and into the relevant period for the disability determination, Plaintiff continued to report to her treating and examining physicians symptoms resulting from the carpal tunnel syndrome. See, e.g., Tr. at 610 (Plaintiff complaining to Scott F. Corneal, D.O., on August 16, 2011 of "periodic tingling in the hands"), 706 (Plaintiff complaining to consultative examiner Dr. Mehrotra on April 9, 2012 of

"numbness in hands"). Dr. Mehrotra specifically noted that Plaintiff "is alleging disability due to . . . carpal tunnel syndrome," among other conditions. Tr. at 706. He found that Plaintiff's "[g]rip strength [was] diminished bilaterally," specifically attributing the diminished strength to "carpal tunnel syndrome." Tr. at 708. Further, he found Plaintiff had "tenderness in both wrists with reduced flexion and extension." Tr. at 708.

In light of the foregoing, the ALJ's finding that Plaintiff's alleged carpal tunnel syndrome is not severe because of a lack of "objective findings by EMG and nerve conduction studies to confirm a diagnosis," Tr. at 16, is not supported by substantial evidence. And the error is not harmless because the ALJ proceeded to the remaining steps assuming no limitations in this regard and without accounting for any such limitations in the RFC.[6] See Tr. at 17-24. In fact, the RFC contains no limitations in Plaintiff's use of her upper extremities. Tr. at 17. For all of these reasons, remand is required for the ALJ to reevaluate whether Plaintiff's carpal tunnel syndrome is a severe impairment and to determine the effects, if any, of the syndrome on Plaintiff's ability to perform work-related functions.

## V. Conclusion

After due consideration, it is

**ORDERED**:

---

[6] The ALJ did recognize Plaintiff's testimony that "her hands are numb, mainly her right hand," Tr. at 18 (referring to Plaintiff's testimony), but the ALJ found Plaintiff incredible to the extent that her allegations conflicted with his RFC determination, Tr. at 18.

1.  The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), and pursuant to § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

    (A) Reevaluate whether Plaintiff's carpal tunnel syndrome is a severe impairment and consider the associated work-related limitations;

    (B) If appropriate, address the other issues raised by Plaintiff in this appeal; and

    (C) Take such other action as may be necessary to resolve this matter properly.

2.  The Clerk is further directed to close the file.

3.  In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on March 6, 2017.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of record